IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOARD OF TRUSTEES OF THE
AUTOMOBILE MECHANICS' LOCAL
NO. 701 UNION AND INDUSTRY
PENSION FUND,

        Plaintiff,

   v.

MAUREEN A. JOYCE, an
Individual; MARY J. GLEASON,
Individually and in her
capacity as the Trustee of
the 1999 Mary J. Gleason
Trust; and THE 1999 MARY J.
GLEASON TRUST, a Trust
organized under the laws of
the State of Illinois,

        Defendants.

Case No. 14 C 9890

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss [ECF No. 14]. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

The following facts are contained in Plaintiff Board of Trustees' (the "Board") Complaint and are presumed true for purposes of deciding the motion to dismiss, though the Court notes that neither party's briefing provides a clear statement of the facts. As far as the Court can tell, Defendant Maureen Joyce is the President and majority shareholder of a company

called Joyce Ford, Inc. ("Joyce Ford"). Maureen Joyce is also the President and sole owner of a company called the 2401 So. Michigan Building Corporation (the "Building Corporation"). Defendant Mary Gleason is Maureen Joyce's mother and the Trustee of the 1999 Mary J. Gleason Trust. The Board is the administrator and sponsor of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund (the "Fund").

This case arises out of ERISA withdrawal liability Joyce Ford incurred in 2012. Joyce Ford was a party to a collective bargaining agreement that required contributions to the Fund. In April 2012, the Fund determined that Joyce Ford effected a "complete withdrawal" from the Fund for ERISA purposes, resulting in withdrawal liability in the amount of $351,854.00. Joyce Ford apparently failed to pay this amount, prompting the Fund to file a lawsuit against Joyce Ford. The Fund also sued the Building Corporation, presumably hoping to satisfy any judgment with assets held by the Building Corporation.

In that litigation, Maureen Joyce stated during a deposition that her Building Corporation was the sole owner of a certain piece of real property in Chicago (the "Chicago Property"). The Fund eventually moved for and won summary judgment against Joyce Ford and the Building Corporation in the amount of approximately $420,000.

According to the Complaint, Maureen Joyce came up with a plan to avoid having to pay the summary judgment award through the use of two sham transactions. First, Maureen, as the owner of the Building Corporation, executed a promissory note in which the Building Corporation promised to pay $450,000 to the Mary J. Gleason Trust. Second, in return for receiving the promissory note, the Building Corporation offered its Chicago Property as collateral to secure the alleged debt, and to that end the Gleason Trust recorded a mortgage against the Chicago Property. The promissory note contains no schedule of payments, and the Gleason Trust provided no consideration for the note. To date, the Building Corporation has not made any payments toward the purported debt. The Board argues that these transactions were a thinly veiled attempt to make the Building Corporation and Joyce Ford judgment-proof by encumbering the sole asset that was valuable enough to satisfy the judgment.

The Board's Complaint contains three counts. The first count alleges that Defendants evaded and avoided ERISA withdrawal liability under 29 U.S.C. § 1392(c). The second count alleges fraud in fact under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), and the third count alleges fraud in law under the IUFTA. Defendants have moved to dismiss, arguing that neither ERISA nor the IUFTA authorizes the remedies the Board seeks.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff. *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir. 1987). A court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

## III. ANALYSIS

The Board's Complaint contains three counts, but each count seeks the same relief: that the Court "void and disregard the Promissory Note and Mortgage" and order the sale of the Chicago Property to satisfy Joyce Ford's ERISA withdrawal liability. Count I of the Board's Complaint alleges that Defendants tried to "evade or avoid liability" as described in § 1392 of ERISA. Count II alleges that Defendants created the promissory note and

mortgage with the actual intent to hinder and defraud creditors in violation of the IUFTA. *See,* 740 ILCS 160/5(a)(1). Count III alleges that the Building Corporation violated the IUFTA by encumbering the Chicago Property without receiving "reasonably equivalent value in exchange for the . . . obligation" in order to avoid satisfying a debt, *i.e.,* the withdrawal liability. *See,* 740 ILCS 160/5(a)(2).

Starting with Count I, under § 1392(c), "[i]f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. § 1392(c). This section was added to ERISA by the Multiemployer Pension Plan Amendments Act of 1980 and "was designed to 'ensure that employers live up to the obligations they owe to the pension fund and to the employees who participate in it.'" *Cent. States, Se. and Sw. Areas Pension Fund v. TAS Inv. Co.,* No. 11-cv-2991, 2013 WL 1222042, at *12 (N.D. Ill. Mar. 25, 2013) (quoting *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. El Paso CGP Co.,* 525 F.3d 591, 596 (7th Cir. 2008)). The section was added to combat the temptation for employers who have "substantial pension liabilities . . . to shirk their obligations through deceptive transactions." *Id.* (internal quotation marks omitted). When an employer violates § 1392(c), "liability will

be determined as if the transaction to evade or avoid liability never occurred, and a plaintiff can reach those 'assets that were transferred in order to evade or avoid liability, *as well as the parties to whom they were improperly transferred*.'" *Id.* (quoting *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range,* 186 F.R.D. 498, 502 (N.D. Ill. 1999)).

To state properly an "evade or avoid" claim, the Board must allege (1) the consummation of a transaction that allows Defendants to evade or avoid withdrawal liability, and (2) that a principal purpose of the transaction was to evade or avoid withdrawal liability. *Ill. Range,* 186 F.R.D. at 503. In addition to satisfying Rule 12(b)(6) standards, evade and avoid claims are subject to the heightened pleading standard for fraud claims set forth in Rule 9(b). *Id.* (citing *IUE AFL-CIO Pension Fund v. Hermann,* 9 F.3d 1049, 1058 (2d Cir. 1993)).

Counts II and III are based on the IUFTA, which is also meant to prevent debtors from using fraudulent transactions to prevent creditors from collecting on debts. *Accord TAS Inv. Co.,* 2013 WL 1222042, at *14 (stating that Michigan's Uniform Fraudulent Transfers Act "was designed to protect creditors against debtors who transfer their property in a manner that impairs creditors' rights") (internal quotation marks omitted). A defendant violates the IUFTA if he either (1) transfers property or incurs an obligation with the actual intent to

defraud creditors, or (2) receives less than reasonably equivalent value for a transfer or obligation that tends to or actually impairs a creditor's rights by leaving the debtor with insufficient assets to satisfy the debt. *In re Hennings Feed & Crop Care,* 365 B.R. 868, 874 (C.D. Ill. 2007).

Defendants argue that the Board cannot possibly state either an evade or avoid claim or an IUFTA claim because the Building Corporation never actually transferred the Chicago Property to the Gleason Trust. Defendants' briefing is not entirely clear on this point. Moreover, a lot of the legal claims Defendants make are not accompanied by any citations to legal authority for those claims. Nonetheless, after struggling through Defendants' sparse briefing, the Court finds their arguments fail.

The crux of Defendants' evade and avoid argument appears to be that evade and avoid claims are analogous to claims under the Uniform Fraudulent Transfers Act that many states, like Illinois, have adopted. *See, Connors v. Marontha Coal Co.,* 670 F. Supp. 45, 47 (D.D.C. 1987) (finding reference to the Uniform Fraudulent Transfers Act "an appropriate and helpful analog."). And because the IUFTA states that a "creditor may recover [a] judgment for the value of the asset *transferred*," 740 ILCS 160/9(b) (emphasis added), the Board cannot state an evade or

avoid claim because the Building Corporation never transferred the deed of the Chicago Property to the Gleason Trust.

This argument fails under § 1392(c)'s plain language, which applies to any "transaction" that is conducted with a principal purpose of evading or avoiding withdrawal liability. Although a transfer of property would certainly constitute a transaction, transactions are not limited just to transfers. If § 1392(c) required an actual transfer of specific assets, employers seeking to shirk liability would have free reign to encumber all their assets through fraudulent transactions, thereby completely avoiding withdrawal liability. Such a result would defeat the very purpose of § 1392(c). The Board has alleged that Defendants engaged in two different transactions — the allegedly phony promissory note and mortgage — with a principal purpose of avoiding withdrawal liability. This is sufficient to survive a 12(b)(6) motion to dismiss.

Defendants' argument as to the IUFTA claims fails for similar reasons. Defendants rely heavily on the use of "transfer" in the IUFTA in arguing that no recovery is possible unless an asset is actually transferred. This again ignores the plain language of the IUFTA, which applies to both "transfers made *and obligations incurred*." 740 ILCS 160/5(a). References to "obligation" and "obligee" abound in the IUFTA. *See, e.g., id.* (titled "Transfer or obligation as to creditor"); *id.* 160/9

(titled "Voidable transfers or obligations"); *id.* (referencing both "transferees" and "obligees"). Thus, there can be no doubt that the IUFTA, like § 1392(c), applies to both fraudulent transfers and obligations incurred.

Defendants also appear to argue that the Board has not satisfied Rule 9(b)'s heightened pleading standard. This argument also fails. The Board has alleged specific facts regarding "the who, what, when, where, and how" of the allegedly fraudulent transactions, which is enough to satisfy Rule 9(b). *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). The Complaint is very specific in describing the transactions. Maureen Joyce allegedly drummed up a fake debt owed to her mother's trust, in exchange for a mortgage that encumbers the Chicago Property that would otherwise satisfy Joyce Ford's withdrawal liability. This is supported by allegations that the Gleason Trust did not impose a schedule of payments or even contemplate when payments would be made to the debt, if ever. The Board further alleges that, to date, the Building Corporation has made no payments toward the debt, and the Gleason Trust provided no consideration for the alleged $450,000 promissory note. Finally, the Board alleges that the "obligation was to an insider," Maureen's mother, which is one of the many factors considered in determining fraud in fact under the IUFTA. *See,* 740 160/5(b). Although none of these

facts alone necessarily *proves* fraud, these facts taken together, if true, support an inference that Defendants cooked up these transactions to evade or avoid withdrawal liability. In short, these allegations are specific enough to satisfy Rule 9(b)'s heightened standards. This is especially true because the allegations involve Defendants' intent, which goes to their state of mind, and such allegations "'may be averred generally,'" even under Rule 9(b). *Ill. Range,* 186 F.R.D. at 503 (quoting FED. R. CIV. P. 9(b)).

Defendants' final argument is that neither Maureen Joyce nor Mary Gleason can be individually liable under § 1392(c) or the IUFTA. The only authority Defendants cite is a portion of *Illinois Range,* in which the court stated that "'[c]ourts routinely rebuff efforts to collect pension debts from managers and investors unless the officer or investor would be liable for the firm's other debts under state law.'" *Id.* at 501 (quoting *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1193 (7th Cir. 1989)). Unfortunately, it appears that Defendants failed to read the rest of the case they cited. In the very next paragraph, the court explains that, although individuals are not usually responsible for a company's initial withdrawal liability, that is not the case for claims based on § 1392. *Id.* Under § 1392(c), "liable parties are not limited to employers." *Id.* The very section heading of the portion of the case

Defendants cite states the court's conclusion that "Individual Defendants are Liable Parties under ERISA." *Id.* at 500. The same conclusion is true for claims under the IUFTA, which allows that a "judgment may be entered against: (1) the first transferee of the asset *or the person* for whose benefit the transfer was made." 740 ILCS 160/9(b) (emphasis added). Thus, the Board is correct that individuals can be liable under both § 1392(c) and the IUFTA.

## IV. CONCLUSION

For reasons stated herein, the Defendants' Motion to Dismiss [ECF No. 14] is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　United States District Court

Dated: 4/24/2015